Cunningham v. Illinois Central R. R. Co., 165 Ill. App. 382.

lin county, Illinois, on the 26th day of October, 1910, but there was no express averment that it became a record.

The statute provides that all recognizances taken in criminal cases shall be delivered to the clerk of the court before which the accused is bound to appear on or before the day mentioned in such recognizance for his appearance, and we are of opinion that when certified and delivered to the clerk a recognizance becomes a matter of record upon which a *scire facias* may issue and the further averment that it became a record was unnecessary. Raysor v. The People, 27 Ill. 190.

The *scire facias* stated a cause of action and there was no error in overruling the demurrer and rendering the judgment for the People.

The judgment will be affirmed.

*Affirmed.*

---

## Harry Cunningham, Appellee, v. Illinois Central Railroad Company et al., Appellants.

1. NEGLIGENCE—*when person upon right of way trespasser.* The right of way of a railroad company is the exclusive property of the company upon which no person not having business with the company has the right to be, and if there for his own convenience he is a trespasser, and the mere acquiescence in such user gives no right to use it nor does it create any obligations for his especial protection.

2. NEGLIGENCE—*when railroad company not liable.* No liability arises from a mere naked license or permission to pass over the private property of a railroad company, except for wilful injuries.

3. NEGLIGENCE—*when railroad company liable for failure to exercise.* Where a railroad company gives an implied invitation to the public to use its private property it is liable for an injury resulting from its failure to exercise ordinary care.

4. CONTRIBUTORY NEGLIGENCE—*care required of minor.* The measure of care to be exercised of a child old enough to be charge-

able with negligence is that measure of care which would be exercised by a child of his age, intelligence and experience under like circumstances.

5. INSTRUCTIONS—*when upon care required of child erroneous.* An instruction upon this subject is erroneous and constitutes reversible error if the jury might conclude therefrom that the care exercised by any child of the age, intelligence, capacity and experience of the child injured, would be sufficient although he had used no care to observe or gain knowledge of the approaching train.

Action in case for personal injuries. Appeal from the Circuit Court of Madison county; the Hon. W. E. HADLEY, Judge, presiding. Heard in this court at the March term, 1911. Reversed and remanded. Opinion filed November 11, 1911.

BURROUGHS & RYDER and C. E. POPE, for appellants; CHARLES A. SCHMETTAU, of counsel.

GEERS & GEERS and WEBB & WEBB, for appellee.

MR. PRESIDING JUSTICE SHIRLEY delivered the opinion of the court.

This is an action by appellee for the recovery of damages caused by being run over by the front trucks of a locomotive which resulted in the loss of the right foot. There was a verdict for the sum of $10,548 upon which the court entered a judgment.

The cause was submitted to the jury upon the first and second counts of the declaration.

In the first count it is charged that the appellant, Illinois Central Railroad Company, was possessed of a railroad track extending through the village of Glen Carbon which crossed a highway or passageway open to the public extending from a certain street in said village to and beyond Coal Washer No. 2, which was used largely by the public upon the invitation and knowledge of said company and upon which crossing the appellants had reason to expect persons at any time, and it was the duty of appellants in approaching said crossing with engines and trains to use reasonable care to avoid persons who might be going over

or upon the crossing, and in approaching the same to give warning by ringing a bell or sounding a whistle.

It was further charged that appellant, Toledo, St. Louis & Western Railroad Company, was possessed of an engine and train under the care and management of its servants and one Jordan, a servant of the Illinois Central Railroad Company, acting as pilot, who were driving the same along said railroad of the Illinois Central Company toward the crossing and while appellee in the exercise of due care was about to cross said railroad at said passageway, the said train was so negligently managed that it ran upon appellee, whereby he was thrown down and his leg and foot so crushed it was necessary to amputate the foot.

The second count is substantially like the first except it is charged the crossing was constructed and maintained by the Illinois Central Company in convenient condition for the passage of persons and vehicles; that it was held out to the public as a public crossing by said company and that it permitted and invited the use of it by the public.

The first question arising upon this record relates to the refusal of the court at the close of the evidence to direct a verdict in favor of appellants upon the ground, as urged, that assuming appellee was injured on the alleged crossing it was at a place where appellants owed him no duty under the declaration charging negligence; that appellee being a trespasser on the grounds of appellant, the Illinois Central Company, or at most a mere licensee, there could be no recovery for mere negligence.

The right of way of a railroad is the exclusive property of the company upon which no person not having business with the company has the right to be, and if there for his own convenience he is a trespasser, and the mere acquiescence in such use gives no right to use it nor does it create any obligation for his special protection.   Wab. R. R. Co. v. Jones, 163 Ill. 167; I. C. R. R. Co. v. O'Connor, 189 *id.* 559; Same

v. Eicher, 202 *id.* 556. The same rule applies to a licensee.

There was no evidence that the alleged crossing was on a street or public highway, and no liability for mere negligence can be based on any obligation of appellants arising out of any duty respecting a highway crossing. No liability arises from a mere naked license or permission to pass over the private property of appellant, Illinois Central Railroad Company, except for wilful injuries; but there is a distinction between such license or permission to pass over, and cases where the owner or occupant holds out any enticement, allurement or inducement to persons to pass over. L. S. & M. S. Ry. Co. v. Bodemer, 139 Ill. 607. ''A mere passive acquiescence by an owner or occupant in a certain use of his land by others involves no liability, but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition suitable for such use and for a breach of this obligation he is liable in damages to a person injured thereby.'' *Ibid.*

There was evidence that the track of the Illinois Central Railroad Company ran east and west through the village of Glen Carbon, the principal part of the village being located on the north side of the tracks. A small number of houses occupied by families were located south of the tracks and near a coal washer. The houses had been so occupied several years prior to the erection of the washer, and the Illinois Central Railroad Company had built a crossing over its tracks with planks which was used by the people living in the houses on the south side. When the washer was built and several months before the injury to appellee, the said company removed the crossing about three hundred feet west near the washer, where it was located at the time of this injury. This crossing was built by placing planks between the rails of the tracks and constructing approaches from a street in Glen

386    APPELLATE COURTS OF ILLINOIS.

Cunningham v. Illinois Central R. R. Co., 165 Ill. App. 382.

Carbon which ran parallel and near to the tracks. The evidence tends to show the crossing was generally used by the public for foot passengers and vehicles passing to and fro from the main part of the village to the washer and dwellings near there on the south side of the tracks. Under this evidence the court could not hold that in constructing the crossing and in its use by the public there was not evidence tending to prove an implied invitation to the public to enter upon and pass over it.

We are of opinion there was no error in refusing to direct a verdict on the ground appellee if on the crossing was a mere trespasser or licensee.

It is also contended the court erred in denying appellant's motion for a new trial on the ground the verdict was against the weight of the evidence. Whether the appellee was on the crossing and using it for highway purposes at the time he was injured, whether he was in the exercise of care, whether appellant, the T., St. L. & W. R. R. Co., whose train struck him, was guilty of negligence in not giving warning of its approach, were questions upon which the evidence was conflicting. The accident happened some four years prior to the trial of the cause and the memory of the eye witnesses to the accident was likely to be more or less affected by lapse of time. Appellee who was then eight years of age and his brother, two years younger, were on their way from a ball game to their home located on the south side of the railroad tracks near the washer. When they reached the crossing a freight train was proceeding east on the main track and they both testify they were waiting for this train to pass over the crossing so they could proceed. They both testify that appellee was on the passing track about the center of the crossing while the brother was off the crossing. There was a curve at this point and while appellee was there as these witnesses testify, a passenger train of the appellant, Toledo, St. Louis and Western Railroad,

came around the curve towards the west without sounding a bell or whistle and appellee was struck by its locomotive. The mother of appellee states she saw him from her home south of the tracks shortly before the accident and he was on the crossing, but that her view was then obscured by the passing freight train and she did not know where he was when struck. Several other witnesses testify they saw the train moving over the passing track and there was no bell or whistle sounded. The engineer of the passenger train testified appellee was eight or ten feet east of the crossing between the two tracks when he first saw him slapping his hands against the passing freight train and that he attempted to run across the track in front of his train when struck and that the bell was ringing continuously after entering the passing track. This witness was corroborated by a witness Roman and the fireman as to the ringing of the bell and Roman testified he rang the bell himself and that there were no boards between the rails at the point where appellee was struck. The conductor of the freight train saw the accident and testified that appellee was twenty or thirty feet east of the crossing and that when he saw the danger appellee was in he noticed the bell on the passenger train was ringing.

In addition to the testimony referred to as to whether appellee was on the crossing, some physical features in the way of blood spots appearing in the evidence are very material.

The testimony is that when appellee's foot was run over he hobbled away thirty or forty feet to a pile of ties where he was picked up and placed on the platform of one of the cars.

A witness Perry testified he was section foreman for the Illinois Central Railroad and was at the place of the accident very shortly after it happened; that he found a blood mark on the track and one on the rail twenty-four feet east of the east end of the plank in the crossing and marked the place on the rail with

388    APPELLATE COURTS OF ILLINOIS.

Cunningham v. Illinois Central R. R. Co., 165 Ill. App. 382.

red kale; that he saw no blood on the crossing but looked for none. Another witness, Berry, agent for the Illinois Central, testified to the same fresh blood stains at the same distance from the crossing and that the stains with bone and cloth mashed thin were there on top of the rail. He was at the place fifteen minutes after the accident. The witnesses Miller and Hawkins corroborate Perry and Berry as to the place where there was fresh blood on top of the rail.

On behalf of appellee, Joseph Flannery, his step-father testified he was there soon after the accident and saw blood on the crossing along the south rail about half way between the wagon tracks and south-east to the scale house about thirty feet; that he saw indications there of some one scrambling to get out of the way. This witness stated that in a former trial of this case he testified about seeing blood but he is contradicted in this by two witnesses who heard him testify and the notes of the stenographer.

William Jacobs testified that he found blood at the same place testified to by Flannery and in his former evidence he said nothing about seeing blood on the crossing. We have carefully read his testimony and it is marked with statements inconsistent with the manifest weight of the evidence. A dispassionate consideration of all the evidence we think would lead any unprejudiced mind to the conclusion that by the greater weight of the evidence appellee was not on the crossing when injured.

Appellee's second instruction was as follows:

"As to the first and second counts of plaintiff's declaration, the court instructs you that the plaintiff, before and while approaching the point where injured, and before and at the time of his injury, was only required to exercise for his safety, the same degree of care and diligence as children of his age, intelligence, capacity, experience, discretion, and understanding and knowledge of the conditions and surroundings then and there existing, would exercise or were able

Cunningham v. Illinois Central R. R. Co., 165 Ill. App. 382.

to exercise under like conditions and surroundings. If you believe, from the greater weight of the evidence, guided by the instructions of the court, that at and before the time the plaintiff approached the point where injured, and at and before the time of his injury, he exercised for his own safety, the same degree of care and diligence that children of his age, intelligence, capacity, experience, discretion, and understanding and knowledge of the conditions and surroundings then and there existing, would exercise or are capable of exercising under like conditions and surroundings, then the plaintiff cannot be charged with the want of reasonable care for his own safety."

The measure of care required to be exercised by a child old enough to be chargeable with negligence, is that measure of care which would be exercised by a child of his age, intelligence, capacity and experience under like circumstances.

In addition to these elements this instruction tells the jury that if appellee also exercised the degree of care such child would have exercised with like knowledge of the conditions existing, he could not be charged with a want of ordinary care.

It is claimed this instruction was misleading as it eliminated the exercise of care on the part of appellee to discover the approaching train.

The hypothetical child by which appellee's care was to be measured was a child with the same knowledge of conditions appellee had. Appellee was on a railroad track where the operation of trains was known to him and there was no evidence that he exercised any care to see the approaching train. He said he had no knowledge of its approach. It was his duty to use reasonable care to acquire knowledge of the approach of trains and this is not required by the instruction.

The jury would understand the instruction to mean that the care exercised by any child of his age, intelligence, capacity and experience would be sufficient, although he had used no care to observe or gain knowledge of the approaching train.

The instruction was misleading and in view of the evidence we think prejudicial.

Upon a consideration of the entire record which we have very carefully gone over we are of the opinion the verdict was against the weight of the evidence upon the material question whether appellee was on the alleged crossing when struck by the train. We are also of the opinion the damages in this case were excessive.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*